Michael A. Onderisin, Plaintiff-Appellee, v. Elgin, Joliet and Eastern Railway Company, Defendant-Appellant.

Gen. No. 11,205.

Second District, First Division.

January 6, 1959.

Rehearing denied February 3, 1959.

Released for publication February 3, 1959.

Stevenson, Conaghan, Hackbert, Rooks and Pitts, of Chicago, Gray, Thomas, Wallace and O'Brien, of Joliet (Harlan L. Hackbert, Robert W. Thomas, of counsel) for appellant.

Dunn, Stefanich and McGarry, of Joliet (Francis A. Dunn, of counsel) for plaintiff-appellee.

JUSTICE McNEAL delivered the opinion of the court.

This is an action under the Federal Employer's Liability Act to recover damages for personal injuries claimed to have been sustained as a result of the negligence of the defendant railway in failing to provide a safe way for plaintiff to walk to his place of employment. The jury returned a verdict in favor of the plaintiff for $12,500. Defendant appeals from the judgment entered on the verdict and from the court's orders denying post-trial motions for judgment notwithstanding the verdict or for a new trial.

Defendant contends: (1) that the court erred in giving plaintiff's instruction No. 4 because there was no evidence of future suffering, loss of health, and time and inability to work which the jury might consider in assessing damages, and (2) that the evidence does not justify the conclusion that defendant was guilty of any negligence. Plaintiff's theory is that the evidence clearly showed that defendant was guilty of negligence, that instruction No. 4 was not erroneous, and that any error in giving the instruction was waived by defendant's failure to object at the conference on instructions. As to waiver of his objection to instruction No. 4, defendant's counsel replies that "Defendant was not asked, nor given an opportunity to state its objections to any instructions other than No. 1. . . . Obviously until both sides had rested, defendant was in no position to object to an instruction on the ground that there was no evidence to sustain portions of the instruction . . . The trial court cannot foreclose defendant's trial strategy by requiring that objections to instructions be made at the close of plaintiff's case or be forever barred. In the absence of any conference after both parties had rested their case, the defendant was not required to suggest any omissions in plaintiff's proof or to correct any deficiency in his tendered instructions."

The record shows that after denying defendant's motion for directed verdict at the close of plaintiff's evi-

dence, the court had a conference on instructions. The trial judge noted that plaintiff had tendered five instructions and the defendant seven. The judge then said: "Now, gentlemen, are there any objections to plaintiff's tendered instructions, if so, give me the number." Defendant's attorney replied: "Objection to Plaintiff's No. 1, your Honor." The court said: "Plaintiff's No. 1, it is refused. What about the defendant's tendered instructions?" Plaintiff's attorney said: "I have no objection to any of their instructions." Thus it affirmatively appears from the record that defendant's attorney was asked and given an opportunity to state his objections not only to No. 1, but to all of plaintiff's tendered instructions.

After the judge had sustained defendant's objection to plaintiff's No. 1, and defendant's counsel made no further objection to any of plaintiff's instructions, the court naturally turned to the question of defendant's instructions. Nothing in the record indicates any foreclosure of defendant's statement of objections, if any, to plaintiff's No. 4. By objecting only to plaintiff's instruction No. 1 when asked by the court if there were any objections to plaintiff's tendered instructions, we think defendant's counsel implied and led the trial court to believe that he had no objection to the remainder of plaintiff's instructions.

██ ██ Defendant suggests that the conference on instructions should have been held after both parties had rested. Section 67 of the Civil Practice Act [Ill. Rev. Stats. 1957, ch. 110, §.67] contains no specific provision fixing the time for the conference. The court is required by the statute to hold a conference with counsel to settle the instructions and to inform them of his proposed action thereon prior to the arguments to the jury. The statute also provides that any party may tender instructions at the close of the evidence or at any earlier time during the trial that the court reasonably

directs. It follows that the conference may be held at any time during the trial within the reasonable discretion of the trial judge, provided counsel are informed of the court's action on tendered instructions prior to arguments to the jury. In the instant case plaintiff presented his evidence pertaining to damages in his case in chief. Accordingly any lack of evidence showing plaintiff's future suffering, loss of health, or time and inability to work should have been equally apparent to defendant's counsel at the close of plaintiff's evidence as at the close of all evidence in the case. Defendant was not prejudiced by the trial court's decision to hold the conference on instructions at the close of plaintiff's evidence rather than after both parties had rested.

■■■■■ Defendant also argues that when section 67 of the Civil Practice Act was amended in 1955 to require the court to hold a conference with counsel to settle instructions, the General Assembly eliminated from the bill introduced for such amendment the following provision: "No party may raise on appeal the giving of an instruction unless he objected thereto at the conference thereon, stating specifically the matter to which he objects and the ground of his objection." Defendant contends that the deletion of this provision from the amendment as enacted clearly negatives any requirement of specific objections to instructions at the conference. We do not agree with this contention. By its amendment of section 67, the General Assembly required the parties to tender instructions or be unable to complain on appeal of the failure to give such instructions, and imposed upon the court a duty to hold a conference to settle the tendered instructions. It cannot be assumed that the legislature would require the court to perform a useless act. The purpose of the conference is to afford counsel an opportunity to object to or correct erroneous instructions. As officers of the court, counsel have a duty to cooperate with the trial

77

judge to the end that the jury may be properly instructed. Enlightened trial practice does not permit counsel under the guise of trial strategy to sit idly by and permit instructions to be given the jury without specific objection and then be given the advantage of predicating error thereon by urging the error for the first time in a post-trial motion. Arboit v. Gateway Transp. Co., 15 Ill.App.2d 500, 512, and Tabor v. Tazewell Service Company, 18 Ill.App.2d 593, 153 N.E.2d 98, 102, were decided after the legislature had deleted the provision mentioned by defendant's counsel from the enacted amendment of section 67; yet in those cases it was held that the failure to assert objections to instructions at the conference precluded raising objections thereto on appeal.

In order to decide whether defendant was guilty of any negligence we now turn to the facts of the case. The plaintiff, Michael A. Onderisin, had been employed by the defendant Elgin, Joliet and Eastern Railway Company since March 2, 1912, first as a locomotive fireman and since 1917 as an engineer. He was 66 years of age at the time of the trial in January, 1958. On December 10, 1953, he was assigned to work as engineer of a switch engine in defendant's yards at East Joliet. Plaintiff's home was located eight or ten blocks east of the yards. For about 41 years he traveled from his home to his place of employment either on foot or in later years, by auto. In either event he proceeded to a parking lot on defendant's premises nearest plaintiff's home, and from there he would walk westerly across several tracks which extended to defendant's steel car shop, thence southerly a couple of blocks along tracks leading to the roundhouse where he reported for work.

About 2:30 P. M. on December 10, 1953, as plaintiff stepped between the rails of the second track leading to the steel car shop, he slipped on a patch of ice, his feet flew out from under him, and he fell backward, landing

across a rail, injuring his right shoulder and arm. Plaintiff proceeded to the roundhouse and reported that he had fallen and hurt his shoulder. He declined to take the engine assigned him because the controls were hard to operate and was assigned to another engine. With the assistance of his fireman he was able to complete his work that day. The next morning plaintiff went to defendant's dispensary at Silver Cross Hospital, where he was examined and treated by defendant's doctors. During the next five months he received about 75 physiotherapy treatments and was under the care of the company doctor until October 15, 1954. He did not regain full use of his arm. Abduction was off about five degrees and internal rotation about fifteen degrees. He lost five months work after the accident and several days each month up to the time of the trial.

Between the parking lot used by plaintiff and the roundhouse there was no walk constructed level with the tops of the rails. Defendant contends that there were five other parking areas from which plaintiff could have walked to the roundhouse on walks constructed level with the tops of the rails. Plaintiff testified that the other parking lots were filled with cars of other employees and that he and other enginemen had always used the lot where he parked his car on the day of the accident. Although officials of the railroad were aware that enginemen traveled the path used by plaintiff, there was no company rule to the contrary. Occasionally defendant had put salt or cinders on the pathway, but had not done so at the time of the accident. Plaintiff's counsel contends that his case is based upon defendant's failure to provide a safe pathway for plaintiff to walk in the yards, and the fact that ice accumulated on the unsafe path enhances his contention.

In Bonnier v. Chicago, Burlington & Quincy R. Co., 2 Ill.2d 606, 610, Pitrowski v. New York, Chicago & St.

L. R. Co., 4 Ill.2d 125, 129, and Allendorf v. Elgin, Joliet & E. Ry. Co., 8 Ill.2d 164, 171, all cases arising under the Federal Employer's Liability Act, the Court said that contributory negligence is not a defense but is considered by the jury only in assessing damages; that to the maximum extent proper, questions in actions arising under the Act should be left to the jury; that only where there is a complete absence of probative facts to support the conclusion reached by the jury, does reversible error appear; and that in the interpretation of this Federal remedy we are bound by the prevailing views of the Federal courts.

■ ■ The United States Supreme Court has expressed the view that the test of a jury case tried under that Act is simply whether the proofs justify with a reason the conclusion that employer negligence played any part, even the slightest, in producing injury . . . for which damages are sought, and it does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including employee's contributory negligence. Rogers v. Missouri P. R. Co., 352 U. S. 500, 1 L.Ed.2d 493, 499; Webb v. Illinois C. R. Co., 352 U. S. 512, 1 L.Ed.2d 503, 507, 764. Where there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion, and the Appellate Court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable. Lavender v. Kurn, 327 U. S. 645, 90 L. Ed. 916, 923.

The decisions of the U. S. Supreme Court in the Webb and Rogers cases have attracted considerable judicial comment. In Milom v. New York Central Railroad Company, 248 F.2d 52, decided by the U. S. Court of Appeals, Seventh Circuit, Chief Judge Duffy concur-

ring, said: "Recent cases of that Court . . . have just about convinced me that in any case where a trial judge submits a case to the jury under the F. E. L. Act, and the jury returns a verdict for the plaintiff, the defendant may as well pay up, irrespective of the proof on the question of negligence and causation." In Gibson v. Thompson, 355 U. S. 18, 2 L.Ed.2d 1, the Court followed the Webb and Rogers cases in reversing the Supreme Court of Texas (298 S.W.2d 97), which had reversed a judgment on a verdict in favor of an engineer in an action under the F. E. L. Act. Justice Harlan joined by Justices Burton and Whittaker, said that the reasoning and philosophy of the Rogers case strips the historic role of the judge in a jury trial of all meaningful significance. The Appellate Court of Illinois, Fourth District, has concluded that the statutory power of the Appellate Court to review the evidence in F. E. L. A. cases has been cancelled by decisions of the United States Supreme Court; that an Appellate Court cannot order a new trial because the verdict is contrary to the manifest weight of the evidence, or because the verdict is excessive, and it is useless to appeal on those grounds. Coleman v. Gulf, M. & O. R. Co., 17 Ill.App.2d 220, 226; Pennell v. Baltimore & Ohio Ry. Co., 13 Ill.App.2d 433, 444.

The facts in the instant case are analogous to those in the Webb and Gibson cases, supra. Webb was a brakeman who was injured during the course of his work when he slipped on a large, partially covered cinder embedded in the roadbed. Gibson, an engineer, sustained injury when he slipped on loose gravel on the surface of the railroad yard while walking to his engine. In both cases the U. S. Supreme Court held that the proofs justified with reason the jury's conclusion that employer negligence played a part in producing the employee's injury. In Johnson v. Elgin, J. & E. Ry. Co., 338 Ill. App. 316, and Amerpohl v. Illinois

81

Cent. R. Co., 17 Ill.App.2d 416, 150 N.E.2d 212 (Abst.), this court sustained recoveries under the F. E. L. Act. Johnson was injured when he was working as a hostler and slipped on a piece of ice and fell from the top of a tender while filling the tank with water. Amerpohl, a yardmaster, sustained injury when he slipped and fell on ice on an incline in a path leading from the door of the yard office to the track. In the light of these decisions and the prevailing liberal views of the U. S. Supreme Court in F. E. L. A. cases as interpreted by courts of review in Illinois, we cannot say that there was a complete absence of any probative facts to support the conclusion reached by the jury on the evidence in this case, or that defendant's negligence played no part in producing plaintiff's injuries. The judgment of the Circuit Court of Will county is therefore affirmed.

Affirmed.

SPIVEY, P. J. and DOVE, J., concur.